SUMMERS, Justice.
A true bill for manslaughter was returned against Jack R. Ricks by the grand jury of East Baton Rouge Parish on November 29, 1973. La.R.S. 14:31. He was tried, found guilty on September 21, 1974, and sentenced to imprisonment at hard labor for ten years.
The sole issue presented by this appeal is defendant’s contention that the trial judge committed error in denying his motion for a directed verdict. La.Code of Criminal Procedure art. 778 in effect during 1974.
Manslaughter is defined in the Criminal Code as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person ; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
Late in the evening of October 12, 1973, Robert A. McCrary and Edgar Stokes entered Lavergne and Madge’s Lounge on Weller Avenue. At that time Jack Ricks and Ralph Caston and their girl-friends Susan Rader and Sally McClane were also patronizing the establishment.
While Ricks and Caston were shooting pool, the two girls left the tavern and sat *459 on Rick’s car which was parked out in front of the bar. Shortly thereafter Mc-Crary and Stokes left the tavern. As they reached the girls they exchanged words with them. It appears that Stokes asked if the girls were lesbians while McCrary was discussing the fact that he came from Texas.
At this point Caston left the bar and suggested to Stokes that he move on. By that time Ricks was also outside the bar and Stokes was heading for McCrary’s car, which McCrary had driven to where Ricks had parked his auto. Then McCrary got out of his car armed with a sawed-off shotgun and pointed it menacingly at the two girls, Caston and Ricks, causing Ricks and his girl-friend to seek refuge behind Ricks’ car. After a few moments of this frightening ordeal, McCrary and Stokes drove off. Ricks armed himself with his pistol and Caston ran to his car to get his rifle.
These crucial facts are contained in Ricks’ confession introduced at the trial:
Well, then the car went on down the road, you know, and then it started weaving and then it got back over in the right lane and Ralph jumped out the car with his rifle. He said, ‘If you didn’t get him, I will,’ and he shot his rifle. But I think, uh, that guy was weaving before he shot his rifle so I figured I’d done gotten him, you know, and then it went way aways down and Bam, I thought it hit a telephone pole, I knew it hit something but I didn’t know what it was until I heard it on the news; and, uh, then Ralph got back in the car and started taking off. (emphasis added)
The two men returned to the tavern and picked up the two girls. Both girls testified that on the trip away from the tavern after the above incident Ricks stated that he believed that he had shot the man who was later identified as McCrary.
A motion for a directed verdict could only be granted under Article 778 in 1974 when there is a total lack of evidence to prove the crime or some essential element thereof. La.Code Criminal Procedure art. 778; State v. Douglas, 278 So.2d 485 (La.1973). There was ample evidence here.
For the reasons assigned, the conviction and sentence are affirmed.